Submitted on briefs March 13; reversed May 22; rehearing
denied June 12, 1945

HACKETT ET UX *v.* JONES ET AL.

(159 P. (2d) 205)

Before BELT, Chief Justice, and ROSSMAN, KELLY,
BAILEY, LUSK, BRAND and HAY, Associate Justices.

*Reuben G. Lenske,* of Portland, for appellant.

*E. L. Crawford,* of Salem, for plaintiffs-respondents, and cross-appellants.

*Roy R. Hewitt,* of Salem, for defendants-respondents.

BELT, C. J.

This is a suit for strict foreclosure of a contract of sale covering Lot 11, Block 8, Englewood Addition to the city of Salem, in Marion county, Oregon.

Plaintiffs allege that on April 13, 1940, they entered into a written contract with Jack Crook and Vera Crook (now Vera Ramsey) wherein it was agreed to sell the above mentioned property to the Crooks for the sum of $1,384.48, payable in monthly instalments of $15.00 each. It is alleged that, for the past four years, the purchasers have defaulted in the payment of taxes levied against the property aggregating on June 15, 1944, the sum of $128.24, and that they further defaulted in keeping the property insured against loss by fire, thereby causing plaintiffs to spend the sum of $5.60 for this purpose. It is not charged that the purchasers defaulted in making the monthly payments. Plaintiffs allege that there is due $1,084.00, together with interest thereon at 6% per annum from December 1, 1943, until paid. C. F. Jones and his wife were made parties defendant by reason of some interest asserted by them in the property, either as tenants of the vendees or as assignees of their interests—the true relationship being allegedly unknown to the plaintiffs.

Subsequent to the execution of the contract in 1940, the Crooks were divorced and in the property settlement the husband executed a quit claim deed conveying

to his wife, now known as Vera Ramsey, his interest in the property. In this deed, dated November 3, 1941, the property was erroneously described as Lot 2, Block 8, Englewood Addition, City of Salem, Marion county, Oregon.

The contract upon which this suit is based is a modification of a contract executed by the same parties on May 16, 1938, relative to the same property. In the original contract the purchase price was stated as $1,650.00, $82.50 being paid at the time of execution thereof and balance in instalments of $15.00 per month. In the modified agreement, the property was erroneously described as in the quit claim deed above mentioned. The error in description, however, is not material, since all parties concerned stipulated on the trial that Lot 11, Block 8, and Lot 2, Block 8, were intended to refer to the same property. Hence, there is no question about the intention of the parties in dealing with the property involved herein.

On December 12, 1938, the defendants Jones went into possession of the property which they assert was under and by virtue of an oral agreement with the Crooks assigning their interests in the contract of sale. The defendant Vera Ramsey—the vendee who acquired the interest of her former husband—contends that the contract of sale was not sold and assigned to the defendants Jones but that the property was rented to them at $15.00 per month.

The circuit court found: (1) That the defendants Jones occupied the premises as "caretakers on behalf of the defendant Vera Ramsey, but have no further interest in said premises"; (2) that "the amounts due plaintiffs on account of said conditional sales contract is the sum of $1,384.48, together with interest thereon

at the rate of 6% per annum from April 15, 1940 until paid, plus the sum of $64.20 paid by plaintiffs on account of taxes and insurance''; (3) that said contract obligates the said Vera Ramsey to pay the sum of $46.50 to H. P. Grant, plus the sum of $41.25 to Charles Sanders'' (contract provided that the Crooks would pay H. P. Grant principal and interest on note amounting to $46.50, and would pay Charles Sanders $41.25, being one-half of brokerage fees); and (4) ''that plaintiffs have collected from defendants Jones the sum of $690.00, which they should be required to refund to said defendants  *   *   *.''

Based upon these findings, it was decreed that defendant Vera Ramsey, within a period of 90 days, pay to plaintiffs the sums above specified and, upon default thereof, that her interests in the property be strictly barred and foreclosed. It was further decreed that plaintiffs be held to account to the defendants Jones in the sum of $690.00, representing money paid by them to the plaintiffs.

From this decree, the defendant Ramsey appeals and plaintiffs have cross appealed. Defendants Jones attempted to prosecute a cross appeal but failed to file notice of appeal within the statutory period of time.

■ We think the record discloses that the defendants Jones occupied the premises merely as tenants. There is no evidence to support the finding that the Joneses were ''caretakers''. It is true that there was ''talk'' by them about buying the property from the plaintiffs but the contract was never executed. The plaintiffs, however, were in no position to sell to the defendants Jones while the interests of the Crooks had not been foreclosed.

After Mr. and Mrs. Jones went into possession, payments of $15.00 per month were first made to the vendee, Vera Ramsey. Then, upon request of plaintiffs, such payments were made by the Joneses to them. These payments to the vendors were made with the knowledge and, at least, acquiescence of the defendant Ramsey. True, the plaintiffs had no right to demand that such payments be made by defendants Jones to them but, nevertheless, it was so done.

Mr. and Mrs. Jones claim to have purchased the interests of the Crooks in 1938, yet the modified contract of sale was executed by the plaintiffs and the Crooks in 1940. The defendants Jones had knowledge of such contract but did not object thereto nor assert that they were sub-purchasers. Furthermore, as indicative of their true status, they were allowed three months' rental for certain improvements made to the property.

Relative to the 1940 contract, Mrs. Jones thus testified:

"* * * Why, I thought everything was all right, and then I was surprised when along came Mr. Crooks and Mrs. Crooks, and Mr. and Mrs. Hackett one day, and they said they had made the second contract, because they had never said anything to me about making a contract until they had all four came into the house; and when they did I was a little surprised, but I thought, Well, I hadn't been there so long, and I thought, well, if they had made a go of it, why, all right. * * *"

Concerning the same matter, Mr. Jones testified:

"Q. Now, did you see Mrs. Crook after the second contract was made? A. The contract wasn't made on that property whatsoever, so I didn't worry about it. The contract was made on Lot 2,

Block 8, and that had nothing to do with me, or didn't bother me whatsoever.

"Q. And that contract didn't affect you? A. It wouldn't have affected me at all because it wasn't on my property. * * *"

The money order receipt introduced in evidence by the Joneses reads as follows:

"Money Order Receipt
Sent to Vera Crook
Address 1164 E. 10th Ave.
Rent of House
655 N. 17th Salem
4/15 to 5/15—40."

■ The monthly payments specified in the contract were equivalent to the reasonable rental value of the property. Mr. and Mrs. Jones received credit for the improvements made. They have not paid anything except rental. There is no reason why plaintiffs should account to them but such payments made by the Joneses should be credited on the purchase price.

■ No question concerning the sufficiency of the pleadings has been presented here or in the lower court by the parties. Hence we see no reason to discuss it.

■ The decree is reversed and the cause remanded with directions to determine the amount due under the contract after crediting the payments above stated. If the record is incomplete so that the balance can not be definitely ascertained, additional testimony should be taken. Defendant Ramsey should be allowed 90 days from date of decree fixing the sum due, in which to pay the same, and, upon default thereof, her interests should be decreed to be foreclosed. It should also be decreed

that none of the other defendants have any interest in the premises.

Each party will pay his own costs and disbursements here and in the circuit court.

HAY, J., concurs in the result.

---

KELLY, J. (Concurring in part and dissenting in part.)

As stated in the majority opinion, the plaintiffs base their complaint on a contract purporting to have been executed on the 13th day of April, 1940, while in truth and in fact the contract thus invoked by plaintiffs is but a modification of the contract of May 16th 1938.

The plaintiffs are unable to agree with either of the appearing defendants as to the defendants' relationship to the plaintiffs or as to the agreement existing between the appearing defendants. Defendant Ramsey is unable to agree with defendant Jones in that regard, and in that respect the learned trial judge disagreed with all of the appearing parties, their pleadings and their proof. In other words, this case is quite disagreeable.

For these reasons, I concur with the majority opinion delivered by Mr. Chief Justice BELT in so far and only in so far as it holds that this cause should be remanded for retrial.

The passing years have brought changes in procedure, but as yet the principle remains unaltered, that to support a judgment there must be an appropriate pleading. Moreover, in order to enable the court to grant affirmative relief, where issue is joined, there must be substantial proof in support of the demand for such affirmative relief. Here, there is neither pleading

nor proof in support of the holding of the trial court to the effect that defendants Jones were merely caretakers.

As much as I regret it, when I consider the holding of the majority of my associates to the effect that the record indisputably discloses that defendants Jones were merely tenants and that defendant Ramsey is entitled to an accounting and an order based thereon by which she may complete the purchase of the property in suit, I find myself adding another disagreeable feature for I am wholly unable to agree thereto.

The plaintiffs in their complaint, and in their printed brief on appeal, expressly state that they are utterly unable to determine whether defendants Jones became the purchasers from them of the premises in suit, or were merely tenants upon a rental basis.

In this connection, a letter, admittedly written by plaintiff Hackett to defendant Mrs. Jones on or about the — day of April, 1943, is as follows:

"Mt Angel
Ore

Mrs. Jones
  Salem Ore
Dear Madame,
  Rec'd Requisition for Rent from March 15 until April 15 1943. Hope they send my check all right now  If you folks stop to figure up the Int due me at 6% and the rent I've allowed you for painting, and windows, roofing the Kitchen and cleaning the drain a couple times I think that you will agree that you owe me more than you think.  The Interest alone amounts to quite a bit each year at 6%.  I figure you can take over the Girod mortgage pay the taxes and owe me over $600 yet on Mrs. Crooks contract I hate to sacrifice the Int. as you would have to pay that wherever you buy. If you can garantee the

cash, so I won't loose a day for nothing I will try and get a day off to deal with you. let me know soon.

As Ever

Dave Hackett

Mt Angel Ore''

Certainly, by no stretch of the imagination could there have been any interest due from defendants Jones to Hackett, if the defendants Jones were only tenants, it being clearly shown that defendants Jones were not in default in their monthly payments. To me the above letter recognizes defendants Jones as having succeeded to the "Mrs. Crooks contract".

Moreover, even if defendant Ramsey had been shown to have succeeded to the interest of her former husband in the contract with plaintiffs, in my opinion, her answer, as well as her testimony, indicates that she abandoned that contract. In her answer, defendant Ramsey states that the reason she did not comply with her part of the contract with plaintiff was that she was unable to ascertain whether plaintiffs held title to the premises involved. Her testimony discloses no other attempted justification for her complete failure to make any payments after defendants Jones took possession of the premises. It is true that Mrs. Ramsey claims that she paid plaintiffs the first installment furnished by defendants Jones. Plaintiffs and defendants Jones dispute this and testify that because such installment was retained by Mrs. Ramsey, plaintiffs directed defendants Jones to make payment of all subsequent installments directly to plaintiffs. To me, this course together with the written reference in the above quoted letter by plaintiff Hackett to the amount yet due from defendants Jones, because the consideration involved not only the purchase price but also interest

thereon, and the fact that for nine months after the receipt of said letter defendants Jones made payment to plaintiffs of the installments agreed upon, present substantial testimony in support of defendants Jones' claim to have been substituted as purchasers in place of defendant Ramsey and her former husband, defendant Crooks.

The only written evidence Mrs. Ramsey presents in support of her claim, that she succeeded to the interest of her former husband in the contract in suit, is a quitclaim deed from him purporting to convey to her his interest in lot 2 of block 8.

It will be borne in mind that the premises in suit consist of lot eleven (11) in said block 8.

The deed in question is a conveyance by one party defendant herein to his codefendant. This variance in description presents more than a mere ambiguity, and in order to become subject to oral explanation, there should be appropriate allegations in defendant Ramsey's answer of facts upon which reformation of said deed would be deemed proper. There is no such pleading before us.

I cannot agree with the majority that the contract mentioned in plaintiffs' complaint was understood by all the parties thereto to be the existing contract between the parties. The only stipulation I find in the record as to that contract is to the effect that it was intended by the description therein to mean lot 11 and not lot 2.

The colloquy between counsel, while Mrs. Ramsey was on the witness stand being questioned by her attorney, Mr. Lenske, dissipates the idea in my mind that there was a binding stipulation in that regard. At the

risk of being deemed prolix, although merely intending to be exact, I am quoting that colloquy:

"Q * * * before I go further with that question, I wonder if Mr. Hewitt and Mr. Crawford will stipulate with me that the second contract was written by a stenographer in Mr. Hewitt's office and that she took the description from the first contract, and in the first contract the description appears as Lot capital I, capital I, on the typewriter, and that Mr. Hewitt's stenographer intending to copy the description took that to mean '2' and then wrote in the second contract Roman numeral II. May we agree that that is the fact, Mr. Hewitt?

Mr. Hewitt: No, I don't have any recollection of it, of course. It is very apparent, I think, from the observation and comparison of the two contracts that that is the thing that happened, and that the girl in my office took those two capital I's for indicating the letter, because the next figure following it is the figure i, and it would—if there was any consistency in the description in the matter of its writing, why that would be the proper interpretation to put upon it, and I am convinced that that is what did happen.

Mr. Crawford: We will stipulate that the Roman No. 2 in the second contract is an error, and it should be Lot 11, but how it happened we don't know and won't stipulate.

Mr. Lenske: Well, may we take Mr. Hewitt's statement as to what apparently happened in his office, would you then agree that that did occur, Mr. Crawford?

Mr. Crawford: Mr. Hewitt says he has no recollection of it; that it just looks that way to him."

Defendants Jones testify to the effect that because in that contract the property was described as lot 2 instead of lot 11, block 8, Englewood Addition, they

deemed that contract to be inapplicable to the issues in the instant case.

The contract so pleaded in plaintiffs' complaint is ambiguous by reason of the description of the conveyed property as lot 2, block 8, Englewood Addition, and the statement therein that the street number is 655 North 17th Street.

The property, which is the subject matter of the dispute here, consists of lot 11, and its street number is 655 North 17th Street.

Even if I could agree that the defendants Jones, through their attorney, actually bound themselves by a stipulation that the document executed by plaintiffs and the defendants Crooks on the 13th day of April 1940 applied to the premises in suit, I am still unable to understand how such a stipulation supplies the allegations essential to plaintiffs' cause of suit, namely, allegations of facts disclosing that upon the 16th day of May, 1938, plaintiffs and defendants Crooks executed a contract wherein plaintiffs agreed to sell and defendants Crooks agreed to purchase the premises in suit upon the terms and conditions stated in said contract of the 16th day of May, 1938, and that thereafter and upon the 13th day of April, 1940, said contract of 1938 was modified by the execution of the document of 1940; and that said contract of 1938, as thus modified, by the later document was breached by defendants Crooks.

I find no stipulation to the effect that upon the 16th day of May, 1938, plaintiffs and defendants executed a contract concerning the premises in suit. To render testimony to that effect relevant, there should be a pleading in the case somewhere to support it.

In thus giving my views as to what I deem to be a basic hiatus or lacuna in the pleading, I am not unmindful of a much more liberal rule applicable to a case where a judgment conformable to the testimony has been rendered. If there were such a judgment here, I would not suggest the necessity for an amendment of plaintiffs' complaint.

The foregoing are some of the reasons why I think that not only should this cause be remanded, but also that opportunity should be given plaintiffs to amend their complaint to conform to the record as to the contract upon which they base their cause of suit, and also that an opportunity be given defendant Ramsey to amend her answer by stating the reasons why a deed from her codefendant to his interest in lot 2 should be deemed to be a deed to his interest in lot 11, and also, if any justifiable reason exists for her failure to comply with her part of the contract with plaintiff, opportunity should be given by amendment to state the same. Thereafter, in my opinion, the case should be tried anew and disposed of conformably to the pleading and proof then presented.

It has been suggested that the course just suggested would be granting to nonappealing litigants, namely, defendants Jones, more favorable relief than that granted by the trial court and hence such course would be improper. My view is that, as this case is now before us there was a mistrial, it is entirely dissimilar to a case wherein the final judgment and decree of the trial court are supported by pleading and proof and upon appeal a nonappealing party seeks a more favorable judgment than the one given by the trial court. Here, defendants Jones did not appeal. The trial court awarded them the return by plaintiffs of all money

paid by them to plaintiffs. Plaintiffs appeal. Holding that such a decree is not supported either by pleading or proof certainly is not awarding relief of any kind to defendants Jones. It is merely relieving plaintiffs of an unwarranted exaction. I cannot bring myself to think that granting such relief to plaintiffs should have the effect of preventing a trial upon the evidence and properly submitted allegations appropriately made by any or all of the parties hereto.

As stated, I concur with the majority in holding that this cause should be remanded, but dissent from the order restricting the procedure thereby to striking an account between plaintiffs and defendant Ramsey.